# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BERNADINE E. MATTHEWS,

                **Plaintiff,**

v.                                       **Case No. 10-C-440**

WAUKESHA COUNTY,
DEBBIE RAPP,
ABC INSURANCE COMPANY, and
and XYZ INSURANCE COMPANY,

                **Defendants.**

# DECISION AND ORDER

## BACKGROUND

        The Plaintiff, Bernadine E. Matthews ("Matthews"), an African-American, filed this employment discrimination action against the Defendants, Waukesha County ("County") and Debbie Rapp ("Rapp"), a human resources assistant for the County (collectively the "Defendants"). The action arises out of Matthews' January 2006, application for a job vacancy as an Economic Support Specialist ("ESS") with the County Department of Health and Human Services.[1] Matthews asserts violations of Title VII of the Civil Rights Act of 1964

---

[1] The scope of the action was narrowed on August 24, 2011, when by stipulation of the parties, Defendant Renee Gage, a senior human resources analyst employed by the County, was dismissed from the action and Matthews' claim relating to the filling of the Economic Support Supervisor position was also dismissed. (*See* ECF No. 24.)

as amended, 42 U.S.C. § 2000e *et seq.*, against the County (first cause of action); 42 U.S.C. § 1981 against the County and Rapp (second cause of action); and, the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against the County and Rapp (third cause of action).

This Decision and Order addresses four pending motions. However, necessary background is provided by a summary of the allegations of the Complaint. For this purpose, the well-pleaded factual allegations of the Complaint are taken as true.

*Allegations of the Complaint*

On Friday, January 13, 2006, Matthews applied in person for a vacancy as an ESS with the County, and conversed with Rapp, who is Caucasian. Less than ten hours after Matthews applied for the ESS position, Rapp disqualified Matthews from eligibility for hiring due to her lack of experience and training. (Compl. ¶ 13.)

On January 18, 2006, Matthews received a letter from the County informing her that her application was rejected. (*Id.*) Matthews called to inquire about why she was found to be unqualified. (*Id.* at ¶ 14.) Rapp told Matthews that the position had been filled and attempted to dissuade her from leaving her application on file. (*Id.*) However, the position had not been filled and there were periodic openings for similar positions. (*Id.*)

The Complaint alleges that Rapp's behavior "locked [Matthews] out of employment opportunities for [the ESS] position and subsequently vacant similar Waukesha County positions." (*Id.* at ¶ 15.) According to the Complaint, the application screening

2

resulted in the exclusion of well-qualified African-American applicants and the inclusion of unqualified Caucasian applicants (*Id.* at ¶ 16) and "[w]ell-qualified African-American finalists for the . . . position[] were denied the position[], and less-qualified non-African-American finalists were awarded the . . . position[]." (*Id.* at ¶ 17.)

The Complaint alleges that County uses a racial outcome standard in hiring that "is an unreasonable and biased selection of the relevant geographical labor market, which includes Milwaukee, and thus results in the gross under-representation of African-Americans in the employ" of the County. (*Id.* at ¶ 18.) As support for such allegation, a graph is attached to the Complaint showing the percentage of African-Americans in Waukesha-Milwaukee, Wisconsin, as compared to the percentage of African-Americans employed by the County. (*Id.*, Ex. A.)

It is also alleged that the facts in the Complaint "constitute intentional or deliberately indifferent racially motivated disfavoring of . . . Matthews and other African-American applicants for the position[] . . . and favoring of non-African-American applicants." (*Id.* at ¶ 19.) The Complaint also alleges that in July 2009 "the EEOC determined that [the County] '. . .discriminated against a class of Black applicants, including [. . . Matthews], when they were excluded from consideration for the Economic Support Specialist position and thus, denied hire.'" (*Id.* at ¶ 20.) After conciliation failed, the United States Department of Justice issued a Notice of Right to Sue letter. (*Id.*)

3

## MATTHEWS' MOTION TO STRIKE AND THE DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY

Pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence, Matthews seeks an order striking the expert report of Mark A. Mone, Ph.D., ("Mone"), a professor and associate dean for Executive Education and Business Engagement at the Lubar School of Business at the University of Wisconsin-Milwaukee ("UW-M"). Matthews contends Mone's report does not require specialized knowledge to reach his conclusions, and his opinions are simply argument, do not address the actual issue in the case, and offer impermissible conclusions about the state of mind of the decision-makers. (Pl.'s Br. Mot. Strike 5, 8.) Further, Matthews asserts that Mone's expertise is not pertinent to this case, and his testimony should be stricken because it presents a conflict of interest. (*Id.* at 11.)

The Defendants counter that Mone's testimony is relevant, reliable, and will assist the jury. (Defs.' Br. Opp'n Mot. Strike 12.) They also assert that no conflict of interest exists. (*Id*. at 2.)

### Leave to File Sur-Reply

Before addressing the motion to strike, the Court considers the Defendants' motion for leave to file a sur-reply in opposition to the motion to strike. Matthews contends that the Defendants' violation of Civil Local Rule 7(i), by filing their sur-reply brief as a separate docketed entry, rather than an attachment to the motion, provides grounds for striking the sur-reply brief. Matthews also argues that the sur-reply brief is not warranted.

4

In filing their motion, the Defendants did not comply with the requirements of Civil Local Rule 7(i)(E.D. Wis.), reproduced below:

> Any paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order *must be filed as an attachment to a motion requesting leave to file it.* If the Court grants the motion, the Clerk of Court must then file the paper.

(Emphasis added). General Local Rule 83(f) states that "[t]he Court may impose appropriate sanctions on any party or attorney who fails to comply with a Local Rule." Additionally, the Rule states that "the Local Rules are intended to be enforced primarily upon the Court's own initiative. " Gen. L.R. 83(f).

The violation of Civil Local Rule 7(i) is not egregious, nor is it unfairly prejudicial. *See id.* The Court declines to deny the motion for failure to comply with Civil Local Rule 7(i). However, it notes that the Defendants made the identical error on February 15, 2012. Any future proposed filings must comply with the procedure set forth in the Rule. If a technical issue underlies the Defendants' failure to file the proposed submissions as attachments to motions seeking leave to file them, they are advised to contact the Clerk of Court's office for assistance.

Although arguing that the sur-reply is not warranted, Matthews has not responded to the Defendants' contention that her reply brief presents new issues and factual information because she filed affidavits for the first time in reply. The Court concurs that Matthews filed new material and raised new arguments in her reply submissions warranting

5

a sur-reply brief. Therefore, in the exercise of the Court's discretion, the Defendants' motion for leave to file a sur-reply is granted. *See Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 631 n.2 (7th Cir. 2010).

## Motion to Strike

In considering the motion to strike, the Court notes that although this action was filed nearly two years ago, the issues in this litigation are not well-defined. The Complaint is couched in broad terms and includes allegations of systemic discrimination against African-Americans. Although Matthews purports to disavow portions of her Complaint, a Complaint is not amended by statements in a brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

Matthews' motion to strike raises contentions that are not fully developed and, in all likelihood, are premature. She challenges the admissibility of Mone's report. However, Mone's deposition is scheduled for March 7, 2012. Information pertaining to the admissibility of Mone's testimony may be elicited during that deposition.

With the foregoing in mind, in considering Matthews' motion to strike, the following rules and presumptions are applicable. Rule 402 provides that "[a]ll relevant evidence is admissible and all irrelevant evidence is inadmissible." Fed. R. Evid. 402. Rule 403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

6

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As recently reiterated "[i]t is the district court's role to ensure that expert testimony is both relevant and reliable." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011)(citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). To do so, this Court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 893-94 (quoting Fed. R. Evid. 702 and citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (outlining "three-step analysis" to be used by district courts before admitting expert testimony)). *Daubert* sets forth the following non-exhaustive factors for the district court to consider when assessing an expert's methodology: (1) whether the theory has been or is capable of being

7

tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community. *Id.* at 894 (citing *Daubert*, 509 U.S. at 593-94.)

"Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Daubert*, 509 U.S. at 596). "Expert testimony is liberally admissible under the Federal Rules of Evidence." *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008). Thus, there is a presumption of admissibility for expert testimony so long as it is relevant, reliable, will assist the trier of fact, and is not unduly prejudicial.

### *Analysis*

### *Specialized Knowledge*

The first ground for striking Mone's report is that it does not require specialized knowledge. Matthews contends that Mone is not qualified as an expert because, although he lists experience in human resources, no experience in health and human services or for any public body that administered welfare benefits is disclosed. However, Mone concluded that she was not qualified for ESS, and he reached that conclusion by reviewing her applications, the applications of the other applicants, and the job description. (Pl.'s Br. Strike, 1, 3, 6.) Matthews asserts that the jury will be capable of doing the same and, therefore, Mone's opinion will be of no assistance to the jury. Matthews cites *Cook v. Sheriff of Monroe County*,

8

402 F.3d 1092, 1107 (11th Cir. 2005)[2]; *McKissick v. Electrolux Home Products, Inc.*, No. 09-cv-01112, 2011 WL 2618238, at *3 (M.D. Tenn. July 1, 2011); *United States v. Devine*, 787 F.2d 1086, 1088 (7th Cir. 1986); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004); and *Klaczak v. Consolidated Med. Transport*, 458 F.Supp.2d 622, 667-68 (N.D. Ill. 2006).

Only the latter three cases were litigated in this circuit. *Devine* pre-dates *Daubert*, decided in 1993 and *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999), and is of little relevance. *Devine*, 787 F.2d at 1088, upheld the exclusion of the testimony of a linguist, proffered by the defense, concerning difficult to hear portions of a "body-bug" tape produced by a Federal Bureau of Investigation agent. The appeals court upheld the determination that the linguist would not have given the jury significant help in understanding the evidence or determining a fact in issue, and that understanding what was said in a tape-recorded conversation is not the outside capacity of the average person. Mone's report is not analogous to the testimony of the linguist in *Devine*.

Also readily distinguishable is *Klaczak*, 458 F.Supp.2d at 667-68, where the proposed expert testimony of a witness was excluded from consideration in an action brought by *qui tam* relators against ambulance companies and hospitals, alleging that hospitals received remuneration from ambulance companies in exchange for referrals of Medicare and Medicaid

---

[2]Matthews indicates that the Court should follow the methodology of *Cook* in analyzing the admissibility of expert testimony. However, the decisions of this district court are controlled by the case law of the Supreme Court and the Court of Appeals for this Circuit. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

9

business. The court determined that the paramedic/lawyer witness lacked the expertise to perform quantitative analysis of the market conditions in the ambulance services industry, the proposed testimony concerning commercial reasonableness of the hospital's contracted rates was unreliable, and the testimony was not derivative of the witness's purported expertise. *Id*.

An expert witness may be qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702.

> The notion that Daubert requires particular credentials for an expert witness is radically unsound. The Federal Rules of Evidence, which Daubert interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character. Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (citations omitted).

Matthews is selective in characterizing Mone's report and, in doing so, ignores its focus – Mone offers his opinions on the procedures used by the County during the selection and hiring process. Mone did not simply look at the applications and offer his personal opinion regarding who should have been hired.

Mone evaluated the process and based on his experience and training, concluded that the procedures used by the County were appropriate and not discriminatory against African-Americans. Mone also offers opinions as to the relevant geographical labor market and how the selection and hiring practices impacted on the hiring of African-American

10

individuals. Mone's opinion is not limited to an evaluation of applications for the position sought by Matthews. The fact that Mone has no experience in health and human services is of no import. The point of Mone's report is to explain the County's process, indicate whether it was followed and whether it was discriminatory – the purpose of his report is not to tell the jury what conclusion to reach as to who was most qualified.

Matthews maintains that *McKissick*, 2011 WL 2618238, at *3, is similar to case at bar. McKissick alleged sex discrimination in the rejection of her applications for employment. 2011 WL 2618238, at *1. In opposition to defendant Electrolux's motion for summary judgment, McKissick relied upon the affidavit of Steve Trail ("Trail"), in which Trail analyzed her qualifications for employment with Electrolux. 2011 WL 2618238, at *4. In his affidavit, Trail stated he had "experience as a machinist, and as a tool and die maker, and [is] experienced in reviewing resumes and conducting interviews including tool and die makers." *Id*. The Tennessee district court found that neither McKissick nor Trail provided any support as to why Trail's experience as a tool and die maker or experience in reviewing resumes and conducting interviews should be considered "specialized knowledge" as required by Federal Rule of Evidence 702. *Id*. In addition, although the court found that Trail's declaration appeared to be based on his own personal experience gained as an employee of another company, the court determined that the proponent of the evidence had not established that tool and die making, resume reviewing, or interviewing is a "field" within which

11

"intellectual rigor" is required of testifying witnesses. *Id.* (citing *Kumho Tire*, 526 U.S. at 152).

Mone's expertise is distinguishable from than that of Trail. Without an unnecessary parroting of Mone's credentials, the Court is satisfied that Mone is sufficiently qualified as an expert on employment and hiring practices. Mone has "developed, reviewed, analyzed, and revised staffing procedures, which include recruitment, selection and hiring practices. Relative to this case, [he has] a depth of expertise accumulated over many years working with many organizations in evaluating employment decisions, beginning with the identification of specific job duties to create position descriptions." (Mone Aff. ¶ 6.) Mone has a 23-year history as a faculty member in the Organizations & Strategic Management area of the UW-M Lubar School of Business, which includes teaching undergraduate, graduate, executive, and doctoral courses, and the development and implementation of the Human Resource Management curriculum at the undergraduate and Master's degree levels. (Defs.' Br. Opp'n Mot. Strike 9.) He has also served as the lead consultant for over a two dozen different companies in diverse industries in evaluating a variety of different human resources and staffing issues. (*Id.* at 10.) Mone's scholarly work has addressed and evaluated issues relating to staffing, recruitment and selection procedures and the predictors of worker performance and achievement levels. Mone has specialized knowledge in the relevant field of human resource management, and his qualifications demonstrate that he is a reliable expert witness in the field of human resources management.

*Reliability*

The expert's testimony must be based on sufficient facts or data, the product of reliable principles and methods, and the expert must reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702. Matthews' motion to strike does not address these questions.

However, the focus of Mone's opinion is whether the County's process and procedures used in the selection and hiring of the positions sought by Matthews was non-discriminatory. In particular, Mone evaluated the challenged decisions as to the initial screening process, the procedure for separating out qualified applicants into groups and the method to be used to select an individual for hire. Mone used the Uniform Guidelines on Employee Selection (the "Guidelines"),[3] the most commonly accepted and used standards and practices for staffing, recruiting, and selecting qualified candidates (Mone Aff. ¶ 9), and his experience and training in personnel matters to evaluate the process used and determine whether that process produced discriminatory results. Mone's analysis entailed specialized

_____

[3]The Guidelines have been jointly adopted by the Equal Employment Opportunity Commission, the Civil Service Commission, the Department of Labor, and the Department of Justice, and are available at http://uniformguidelines.com/uniformguidelines.html#2. (last visited Feb. 22, 2012). The purpose of the Guidelines is to

> incorporate a single set of principles which are designed to assist employers, labor organizations, employment agencies, and licensing and certification boards to comply with requirements of Federal law prohibiting employment practices which discriminate on grounds of race, color, religion, sex, and national origin. They are designed to provide a framework for determining the proper use of tests and other selection procedures.

*Id*.

13

knowledge and experience as to the standards and methods used by employers for hiring and selection of employees.

At this stage in litigation, this is enough to establish that Mone's testimony is reliable. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000), explains

> the question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based. It is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound.

(Citations omitted). However, the Court also notes that at this juncture, the information regarding Mone's methodology is limited, and the issue may be revisited as additional information is provided.

*Relevance*

Matthews challenges the relevancy of Mone's report. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Matthews' Complaint alleges discriminatory hiring practices and outcomes.

Matthews alleges a § 1983 claim against the County and Rapp. She alleges that Rapp was acting under color of state law and "in the scope of her duties" within the meaning of Wis. Stat. § 895.46. (Compl. ¶¶ 3-4.) To establish liability under § 1983, Matthews must

14

establish that Rapp acted under color of state law and she was a municipal policymaker with final authority,[4] or that she acted pursuant to the County's policy, practice, or custom of discrimination, as required for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). *See Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009); *Sims v. Mulcahy*, 902 F.2d 524, 539 n. 8 (7th Cir. 1990). The purpose of Mone's testimony is to evaluate the procedures used by the County and Rapp during the selection and hiring process. An integral part of that evaluation is to determine whether the County and Rapp followed those procedures, which required an analysis of the stated procedures as to how the applicants were actually evaluated.

Matthews' claim under § 2000e *et seq*. is also broad. An action can be maintained under 42 U.S.C. § 2000e-2(a)(1) for an employer's discrimination against any individual because of an individual's race or color under 42 U.S.C. § 2000e-2(a)(2) for an employer's classification or segregation of employees or applicants for employment in any way which deprives an individual of employment opportunities, because of such individual's race or color.

The breadth of the allegations of Matthews' Complaint is at odds with the statement in her reply brief that "[w]hether Waukesha County had sound practices, then, is completely irrelevant." (Pl.'s Reply Br. Mot. Strike 3.) Matthews' statement in her brief that the County's hiring practices are irrelevant, is inconsistent with the factual allegations of the

---

[4]The Complaint does not allege that Rapp was a policy maker.

15

Complaint, which make them relevant. Though Matthews maintains that she is not attacking the hiring policies employed by the County, her Complaint leaves the door open for such a claim by not specifying which specific statutory provision she intends to rely on.

In her reply brief, Matthews also states that she "does not challenge the propriety of screening applications for minimum qualifications, nor does she challenge the policy of grouping candidates when there is a large pool of potential interviewees. She is claiming that irrespective of the policies and practices on the books, Rapp delayed her recommendation . . . because of Matthews' race." (*Id*. at 10.) Again, this is at odds with the allegation in her Complaint that "the facts set forth in . . . this Complaint constitute intentional or deliberately indifferent racially motivated disfavor*ing* of . . . Matthews *and other African-American applicants* . . . and favor*ing* of non-African-American applicant*s*." (Compl. ¶ 19) (emphasis added). Matthews' inclusion of harm to others as evidence of discrimination and her use of the continuous verb tense ("favoring"/"disfavoring") indicate that she either intends to use evidence of discriminatory patterns or practices as evidence to support her own claim or that she may raise such claims at trial.

Matthews' statements in her reply brief cannot be reconciled with the claims and facts alleged in her Complaint. Though Matthews seemingly only intends to argue a direct discrimination claim, the Court cannot ignore the factual allegations of her Complaint that relate to hiring patterns or practices. Even if the ultimate issue to be decided (in Matthews' eyes) truly is whether Rapp refused to advance Matthews in the hiring process because she is

16

African-American, the likelihood that Matthews will also present pattern or practice evidence is too strong to discount the relevance and helpfulness of Mone's testimony on the issue of hiring practices.

The latter is of particular concern given that Matthews' designation of Mary W. Gray, Ph.D. ("Gray"), as an expert witness. (Nelson Aff. ¶ 2, Ex. B (Gray Report ).) Gray examined the County's employment pattern from January 1, 2005, through January 1, 2011, with respect to the hiring of Blacks and non-Blacks. She concluded that there is a statistically significant difference in the proportion of Blacks in the County workforce as compared in the "Milwaukee-Waukesha WI PMSA"

> In order for an expert's testimony to qualify as 'relevant' under Rule 702 it must assist the jury in determining *any* fact at issue in the case. Although under Rule 704(a) an expert may testify to the ultimate issue in a case, the expert's testimony need not relate to the ultimate issue in order to be relevant under Rule 702.

*Smith*, 215 F.3d at 721.

Based on Matthews' Complaint, Mone's testimony will be relevant to understanding the County's hiring practices and whether Rapp acted under color of state law. This is enough to satisfy Rule 702. If Matthews amended her Complaint to reflect the statements that in her brief that attempt to narrow her claims, then she might be able to better argue that Mone's testimony would be irrelevant to the facts at issue in this case.

Matthews also argues that Mone is not qualified to give an opinion as to the state of mind of the decision makers in this case. The Defendants acknowledge that an expert

17

cannot testify as to one's state of mind.  (Defs.' Br. Opp'n Mot. Strike, 16-17.)  Thus, the Defendants will not offer Mone's testimony to that effect .

However, the Defendants also state that the opinions offered by Mone are "more of an explanation as to the process when evaluating whether the established procedures were proper and whether they were followed."  (*Id.* at 17.)  They also state that even if the Court were to preclude Mone from offering opinions relating to what was plausible during the process, this does not mean that all of Mone's opinions should be stricken.  This Court agrees. Any further rulings on the admissibility of Mone's opinions will await future developments in this action.

*Conflict of Interest*

Matthews also seeks to exclude Mone's testimony asserting that he has a conflict of interest.  She states that she "has been a student at UW-Milwaukee.  As a professor there, . . . Mone presumably has access to confidential information about Matthews.  Therefore, his opinions should be stricken because of a conflict of interest."  (Pl.'s Br. Mot. Strike 2.) Matthews also states "Mone's right to access this information without Matthews' knowledge is equivalent to the actual provision of that information."  (*Id.* at 11.)

The sole case cited by Matthews is *Chamberlain Grp., Inc. v. Interlogix, Inc.*, No. 01-C-6157, 2002 WL 653893, at *3 (N.D. Ill.  Apr. 19, 2002), which involved a motion to disqualify an expert who switched from one side to another.  The district court applied "[a] two-prong test . . . to determine whether an expert should be disqualified: (1) whether the

18

attorney or client acted reasonably in assuming that a confidential or fiduciary relationship developed; and (2) whether confidential information was exchanged requiring disqualification of the expert." *Id*.[5]

    *Chamberlain Grp., Inc*, held that conclusory assertions of a conflict of interest are insufficient to disqualify an expert witness.

> Interlogix does not elaborate on the type of confidential business information that Dr. Rhyne received. Nor does Interlogix address the manner in which that business information is relevant to the issues in this action or Dr. Rhyne's role as Chamberlain's expert. Interlogix must establish a substantial relationship between Dr. Rhyne's purported knowledge of business information and the subject matter of Dr. Rhyne's testimony. Interlogix offers nothing more than conclusory affidavits that state Dr. Rhyne was exposed to confidential business strategy. Interlogix cannot satisfy its burden to disqualify Dr. Rhyne based on unsupported assertions.

*Id*. Matthews attempts to apply the test in an entirely different context – her motion is not based on a prior relationship between them. Rather, she infers that he has access to confidential information about her and that he actually accessed it, and that such information creates a conflict of interest. Matthews' ground for disqualification of Mone is built on inferences and speculation.

---

[5]As far as this Court can discern, neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has adopted a test for disqualification of an expert based on a purported conflict of interest. "A district court decision does not have precedential effect, *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) – that is, it is not an authority, having force independent of its reasoning." *Wirtz v. City of South Bend*, No. 11-3811, __ F.3d __ , 2012 WL 384861, at *3 (7th Cir. Feb. 7, 2012). However, for purpose of resolving Matthews' motion, the Court applies the test outlined in *Chamberlain Grp., Inc.*, 2002 WL 653893, at *3.

Moreover, Mone avers that he has never had access to Matthews' confidential information. (Mone Aff. ¶ 3.) Matthews attempts to counter, averring that "I was told by Dr. Jim Hill, an associate dean at UW-Milwaukee, that . . . Mone has access to all students' academic records through the PAWS system." (Matthews Aff. ¶ 6.) Matthews' proffer is unsupported hearsay and does not warrant further inquiry into the matter. Matthews has not refuted Mone's affidavit establishing that he does not have access to her confidential information.

In sum, Matthews' contentions do not establish a basis for striking Mone's report and, therefore, her motion is denied.

## EXPEDITED NON-DISPOSITIVE MOTION TO COMPEL DISCOVERY

By their expedited non-dispositive motion to compel discovery, the Defendants seek an order compelling Matthews to sign "standard medical, social security, educational and employment authorizations to allow for discovery of damage documents in this employment case." The Defendants want Matthews to sign authorizations allowing them to obtain medical records from Jeffery Gorelick, M.D. ("Gorelick"), Marc Ackerman, M.D. ("Ackerman"), Sheryl Dolezal ("Dolezal"), school records from Milwaukee Area Technical College ("MATC"), and UW-M, employment records from Midwest Connect/Skyways Airlines ("Midwest") and Best Buy (Matthews' current employer) and the Social Security Administration ("SSA"). The Defendants state that despite several written communications and telephone conversations with Matthews' attorney to obtain the signed authorizations,

20

Matthews refuses to provide any of the requested authorizations. (Nelson Aff. filed Feb. 3, 2012 ¶ 3.)

Matthews opposes the requested authorizations for the records of Gorelick, the SSA, MATC and UW-M asserting that they are not discoverable because they are not reasonably likely to lead to the discovery of admissible evidence. As to Ackerman, Dolezal and Best Buy, Matthews states she will provide such records through counsel. With respect to Midwest, Matthews has established that such records to not exist.

Matthews also objects to some of the provisions of the proffered authorizations, However, in their sur-reply brief, the Defendants maintain that any concerns with authorization language should have been addressed with their attorneys before Matthews argued any deficiencies as a reason for not signing them. They also state that the same language to which Matthews objects is contained with the authorization to obtain medical records that she executed to allow her attorneys access to the medical records. The Defendants state they will use the same forms as Matthews signed for her attorney.

Raising an objection for first time in response to a motion to compel blind sides opposing counsel. Moreover, it defeats the purpose of the requirement that counsel meet and confer in a good faith effort to resolve discovery disputes. The Defendants' response indicating their willingness to use the form that Matthews has previously executed for her attorneys also highlights the importance of the "meet and confer" requirement of the Rule 37(a)(1) and Civil Local Rule 37 (E.D. Wis.). Matthews' non-compliance with the

21

requirement has squandered the limited resources of the Court, as well as the attention of opposing counsel.   Matthews is admonished to comply with the rules.

The scope of discoverable evidence is broad.  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir.2004)(quoting Fed. R. Civ. P. 26(b)(1)).

Matthews seeks to recover damages for loss of employment opportunities, humiliation, and emotional distress.  By seeking such damages Matthews has placed her ability to work and her emotional state at issue, and the Defendants are entitled to discover any relevant records. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718  (7th Cir. 2006) (regarding the plaintiff's psychiatric records).  Apparently, Gorelick has placed Matthews on a permanent medical restriction that forbids her from working more than 20 hours per week.  (Defs.' Expedited Mot. Compel, 2.)  Gorelick's records and the records of the SSA are relevant to the amount of damages because of Matthews' claimed loss of employment.  The MATC and UW-M records are relevant to Matthews' claims of lost employment and lost employment opportunities and, therefore, they are discoverable.   Therefore, Matthews must execute authorizations to allow the Defendants to obtain such information. Matthews will also provide

22

the Defendants with her records from Best Buy through counsel. With the exception of the Midwest records, the Defendants' expedited non-dispositive motion to compel is granted.

**EXPEDITED NON-DISPOSITIVE MOTION FOR A PROTECTIVE ORDER**

Matthews' expedited non-dispositive motion for a protective order seeks an order sealing two letters from Dolezal that were filed as exhibits in support of the Defendants' motion to compel. Matthews asserts that the letters contain sensitive issues regarding her health and requests a sealing order to protect her from embarrassment. She also requests that any medical records filed in the future be sealed.

Federal Rule of Civil Procedure 26(c) allows the court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . ." The party seeking to seal items has the burden of showing cause and must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002). Moreover, the rights of the public kick in when material produced during discovery is filed in the public record. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). "The public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

The Court may not issue a protective order without making an independent assessment that good cause exists for such an order. Fed. R. Civ. P. 26(c); *see Jepson, Inc. v.*

23

*Makita Elec. Works, Ltd.*, 30 F.3d 854, 858-59 (7th Cir. 1994). This Court may seal medical records and limit their use in the trial (which is public) to the extent that a plaintiff's interest in privacy outweighs the probative value of the information contained in the records. *See Oberweis Dairy*, 456 F.3d at 718. Additionally, a protective order may only issue if the order "makes explicit that either party and any interested member of the public can challenge the secreting of particular documents." *Cincinnati Ins.*, 178 F.3d at 945.

   "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). Matthews' assertions of embarrassment are not sufficient to establish good cause for sealing the two letters. Therefore, Matthews' motion to seal is denied without prejudice.

   Matthews also seeks to seal future filings of her medical records. However, as may be obvious from the foregoing discussion, it would be impossible for this Court to make an independent finding of "good cause" with respect to an unidentified future filing. Any future sealing motions must be brought under Civil Local Rule 26(f) and General Local Rule 79(d) (E.D. Wis.). Matthews' expedited non-dispositive motion for a protective order is denied without prejudice.

24

NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:

Matthews' motion to strike Mone as an expert witness (ECF No. 30) is **DENIED**;

The Defendants' motion for leave to file a sur-reply (ECF No. 41) is **GRANTED**;

The Defendants' expedited non-dispositive motion to obtain discovery (ECF No. 44) is **GRANTED** except with respect to the Midwest records which do not exist; and

Matthews' Civil L.R. 7(h) expedited non-dispositive motion for a protective order (ECF No. 46) is **DENIED WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin this ___1st___ day of March, 2012.

BY THE COURT

_____

**Hon. Rudolph T. Randa**
**U.S. District Judge**

25